**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**United States of America,**

               **Plaintiff,**           REPORT AND
                                                                    RECOMMENDATION
      **v.**                                            09-CR-6116

**Wayne Marshall,**

               **Defendant.**

### Procedural Background

On December 4, 2009, defendant Wayne Marshall filed omnibus motions. The motions sought various forms of relief, none of which was particularly complicated or disputed. See Docket # 65. Marshall resides in Arizona and the motions were argued on March 16, 2010. All of the motions were resolved during the hearing, save one oral motion Marshall's counsel made at the conclusion of the hearing.

At the conclusion of motion argument, Marshall's counsel asked if he could join in motions made by co-defendant Joseph Thomson seeking to suppress wiretap evidence gathered by the government in the investigation of the case. The government informed the Court that Marshall had standing to suppress the Title III evidence and did not object to Marshall joining in co-defendant Thompson's motion to suppress. The Court reluctantly agreed[1] to allow

---

[1] This Court has a longstanding policy of requiring each defense counsel to independently file motions on behalf of their

Marshall to join in Thomson's motions as to the wiretap evidence but informed defense counsel that Thompson's motion with respect to the wiretap evidence was limited to the issue of whether the Title III applications at issue were obtained without an adequate showing that normal investigative means had been exhausted.

## **Discussion**

Marshall is charged in Count 2 of the indictment with conspiring with others, including Thomson, to possess with intent to distribute, and to distribute, 50 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. § 846.  During the course of the investigation of the conspiracy, Judge Siragusa issued several orders authorizing the interception of wire communications over various phones used by Thomson and others involved in the conspiracy.  Marshall argued that the eavesdropping warrants should not have been authorized because the affidavits submitted in support of the warrants contained

---

clients and not simply file boilerplate motions seeking to "join in relevant motions of co-counsel."  One of the reasons for this policy is that co-defendants may not pursue their motions for a variety of reasons, including entering a plea of guilty.  That is what happened here.  Thomson entered plea negotiations after his motions were argued and his Title III suppression motion was never decided.  The Court must now decide a motion drafted by counsel for a co-defendant who awaits sentencing and no longer wants the motion decided.  Moreover, some of the arguments made in support of the motion concern why normal investigative means would have worked because of circumstances and facts pertaining to Thomson.  See, e.g., Declaration of Michael J. Tallon, Esq. annexed to Docket # 67 at ¶¶ 29, 38.

insufficient information to demonstrate that traditional investigative procedures had been exhausted or otherwise adequately considered. See Declaration of Michael J. Tallon, Esq. (hereinafter "Tallon Decl.") annexed to Docket # 67. For example, Marshall claims that (i) confidential informants who were unwilling to talk to law enforcement could have been placed in the witness protection program or appointed counsel to negotiate their on-the-record cooperation; (ii) the usefulness of ordinary surveillance, search warrants and other investigative techniques were prematurely dismissed or minimized; and (iii) undercover operations could reasonably have assisted in achieving the goals of the investigation. See Tallon Decl. at pp. 15-20.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 allows for wiretaps in limited circumstances. See 18 U.S.C. § 2510 *et seq*. Under § 2518, in order to lawfully conduct wiretap surveillance, the government's application must set forth "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." See 18 U.S.C. § 2518(1)(c). The purpose of this requirement "is to strike a balance between citizens' privacy rights and the needs of law enforcement by ensuring that wiretapping is not used when traditional investigative techniques would suffice." United States v. Vasconcellos, 658 F. Supp. 2d 366, 393 (N.D.N.Y. 2009).

3

In United States v. Concepcion, 579 F.3d 214 (2d Cir. 2009), the Second Circuit reviewed the standard courts should utilize in determining whether the government has met the exhaustion requirement. While emphasizing that generalized and conclusory statements are insufficient, the court also held that "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance." Id. at 218. The court stated courts deciding whether to issue wiretaps should apply a "commonsense approach" especially "in complex and sprawling criminal cases involving large conspiracies." Id.

Applying a commonsense approach to the wiretaps at issue here yields a conclusion that the motion to suppress should be denied. Marshall complains that investigative techniques less intrusive than electronic eavesdropping could have been successfully used by law enforcement and that the exhaustion requirement demands a showing that alternative techniques have been "tried and failed or have truly yielded an improbable prospect of success." See Tallon Decl. at ¶ 38. However, "[n]either the New York nor the federal statute requires that any particular investigative procedures be exhausted before a wiretap may be authorized. Wiretaps are neither a routine initial step nor an absolute last resort." United States. v. Lilla, 699 F.2d 99, 104 (2d Cir. 1983)(citation and quotations omitted). See United States v. Terry, 702 F.2d

4

299, 310 (2d Cir. 1983)("An affidavit describing the standard techniques that have been tried and facts demonstrating why they are no longer effective is sufficient to support an eavesdropping order even if every other possible means of investigation has not been exhausted."); United States v. Funderburk, 492 F. Supp. 2d 223, 242 (W.D.N.Y. 2007)("The purpose of this requirement is not to render electronic surveillance an investigative tool of last resort, but to apprise the judicial officer of the progress of the investigation and the difficulties inherent in the use of normal investigative techniques.").

The June 2008 affidavit (114 pages) submitted by Agent Schirching in support of the wiretap applications at issue here was more than "minimally adequate." See United States v. Torres, 901 F.2d 205, 231 (2d Cir. 1990). It described an investigation that began in early 2005 indicating a wide-ranging methamphetamine trafficking operation being conducted by various individuals, many of whom were members of motorcycle clubs including the Hells Angels. Contrary to Thomson's arguments, I find that Agent Schirching discussed (in far more than boilerplate language) the utility and use of normal investigative techniques, including the use of confidential informants or undercover officers, physical surveillance, tracking devices, traffic stops, trash searches, search warrants, interviewing or subpoenaing subjects of their investigation, toll records and pen registers. His affidavit

asserted that these methods only provided a limited picture of the trafficking network.  Indeed, Agent Schirching stated that despite the fact that the investigative team has been "intensively investigating" the criminal activities of the conspiracy for over ten months, it has yet to develop through normal investigative techniques a "prosecutable case against any targets."  Agent Schirching also informed Judge Siragusa that their investigation has shown that the members of the conspiracy regularly use the telephone to further the goals of their drug trafficking activities.  "[W]iretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation". United States v. Steinberg, 525 F.2d 1126, 1130 (2d Cir. 1975), *cert. denied*, 425 U.S. 971 (1976).

In sum, viewing the affidavits submitted in support of the wiretap applications in a commonsense fashion reveals a large scale illegal drug trafficking operation which could not be adequately investigated by traditional methods.  Giving appropriate deference to Judge Siragusa's review and acceptance of the affidavit in support of the application for the warrants, I conclude that Judge Siragusa properly found that the applications adequately addressed the exhaustion requirement found in § 2518. Accordingly, it is my Report and Recommendation that defendant's motion to suppress the evidence obtained through the court-issued Title III intercept orders be **denied**.

## **Conclusion**

For the foregoing reasons, it is my Report and Recommendation that the defendant's oral motion to suppress evidence seized pursuant to eavesdropping warrants be **denied.**

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: September 15, 2011
Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).[2]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:   September 15, 2011
         Rochester, New York

---

[2] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).